BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ATagvoryan@BlankRome.com
Julianna Simon (SBN 307664)
JMSimon@BlankRome.com
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:  424.239.3434

Attorneys for Defendant
CLUBCORP USA, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY CUENCO, on behalf of himself, and all those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CLUBCORP USA, INC.,<br><br>Defendant. | Case No. 3:20-cv-0774 BEN AHG<br><br>Assigned to Hon. Janis L. Sammartino<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION, AND DISMISS OR STAY**<br><br>Hearing:<br>Date:     August 6, 2020<br>Time:     1:30 PM<br>Place:    4D<br><br>[*Notice of Motion and Motion, Declaration of Frank Busic; and [Proposed] Order filed concurrently herewith*] |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION. ....................................................................... 7

II.   STATEMENT OF FACTS. ........................................................ 7

    A.    Relevant Background. ...................................................... 7

        1.    Plaintiff's Membership Contracts. ...................... 7

        2.    The Arbitration Agreement. ................................. 9

    B.    Plaintiff Acknowledges the Existence of a Membership Agreement. .................................................................... 10

III.  ARGUMENT. .......................................................................... 10

    A.    The Court Should Issue an Order Compelling Plaintiff to Arbitrate His Claims. .................................................... 11

        1.    Legal Standard for Enforcement of Arbitration Provisions Under the FAA. ................................ 11

        2.    Plaintiff Agreed to Submit the Question of Arbitrability to an Arbitrator. ................................................ 13

        3.    The Arbitration Provision Is Valid and an Enforceable Agreement Exists Requiring Plaintiff to Arbitrate His Claims. ............................................................ 13

        4.    Plaintiff's Claims Against ClubCorp are Subject to the 2018 Arbitration Agreement. ............................ 16

        5.    The Court May Dismiss This Action or Stay This Case Pending the Conclusion of the Arbitration Proceedings. ........ 18

IV.   CONCLUSION. ...................................................................... 19

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009) ................................................................ 16

*Aspire Home Healthcare, Inc. v. Therastaff, LLC*,
    No. 13CV2917-MMA (JLB), 2014 WL 12539917 (S.D. Cal. June
    9, 2014) .................................................................................... 15

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................ 12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) .......................................................... 11, 12

*Baker v. Aubry*,
    216 Cal. App. 3d 1259 (1989) ................................................. 8

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ............................................... 13

*Chan v. Drexel Burnham Lambert, Inc.*,
    178 Cal. App. 3d 632  (1986) .................................................. 8

*Chiron Corp. v. Ortho Diagnostic Sys.*, Inc.,
    207 F.3d 1126 (9th Cir. 2000) ............................................... 12

*Cristo v. Charles Schwab Corp.*,
    No. 17-CV-1843-GPC-MDD, 2018 WL 1737544 (S.D. Cal. Apr.
    11, 2018) .................................................................................. 15

*Entravision Commc'ns Corp. v. BroadView Software, Inc.*,
    No. CV 09-4573-GHK (AJWx), 2009 WL 10675885 (C.D. Cal.
    Aug. 26, 2009) ........................................................................ 18

*Eubank v. Terminix Int'l, Inc.*,
    No. 15CV00145-WQH (JMA), 2015 WL 1843026 (S.D. Cal. Apr.
    21, 2015) .................................................................................. 19

*Ever-Gotesco Res. & Holdings, Inc. v. PriceSmart, Inc.*,
    192 F. Supp. 2d 1040 (S.D. Cal. 2002) ................................. 19

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

*Goldman v. KPMG, LLP,*
    173 Cal. App. 4th 209 (2009) ............................................................. 17

*Green Tree Fin. Corp.-Alabama v. Randolph,*
    531 U.S. 79 (2000) ............................................................................. 12

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002) ............................................................................. 12

*Ins. Co. of the State of Pennsylvania v. Centex Homes,*
    No. 14-CV-18-H (BLM), 2014 WL 12577032 (S.D. Cal. Apr. 3,
    2014) .................................................................................................. 19

*Kosel v. Sw. Reg'l Council of Carpenters,*
    No. 14-CV-1396 JLS (NLS), 2014 WL 12570909 (S.D. Cal. Sept.
    24, 2014) ............................................................................................ 15

*Kramer v. Toyota Motor Corp.,*
    705 F.3d 1122 (9th Cir. 2013) ........................................................... 17

*Lanning v. BMW of N. Am., LLC,*
    No. 3:19-CV-00773-BEN-LL, 2019 WL 5748518 (S.D. Cal. Nov.
    5, 2019) ........................................................................................ 17, 18

*Larkin v. Williams, Woolley, Cogswell, Nakazawa Russell,*
    76 Cal. App. 4th 227 (1999) ............................................................... 16

*Laster v. T-Mobile USA, Inc.,*
    No. 05CV1167 DMS (WVG), 2013 WL 4082682 (S.D. Cal. July
    19, 2013) ............................................................................................ 12

*MoistTech Corp. v. Sensortech Sys., Inc.,*
    No. CV 15-4952 PA (JPRx), 2015 WL 12778416 (C.D. Cal. Sept.
    14, 2015) ............................................................................................ 15

*Mortensen v. Bresnan Commc'ns, LLC,*
    722 F.3d 1151 (9th Cir. 2013) ........................................................... 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ............................................................................... 12

*Moule v. United Parcel Serv. Co.,*
    No. 1:16-00102-JLT, 2016 WL 3648961 (E.D. Cal. July 7, 2016) ............. 12, 14

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

*Peffer v. Philadelphia Indem. Co.*,
    No. 14CV2980 JAH (JLB), 2015 WL 5675424 (S.D. Cal. Sept. 25,
    2015) ............................................................................................................ 19

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
    687 F.3d 671 (5th Cir. 2012) ..................................................................... 13

*Provencher v. Dell, Inc.*,
    409 F. Supp. 2d 1196 (C.D. Cal. 2006) ..................................................... 14

*Republic of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991) ..................................................................... 12

*Rosendahl v. Bridgepoint Educ., Inc.*,
    No. 11CV61 WQH (WVG), 2012 WL 667049 (S.D. Cal. Feb. 28,
    2012) ............................................................................................................ 14

*Selby v. Deutsche Bank Tr. Co.*,
    No. 12CV1562 AJB (BGS), 2013 WL 12072527 (S.D. Cal. Nov.
    13, 2013) ................................................................................................ 17, 18

*Shaw v. Regents of Univ. of Cal.*,
    58 Cal. App. 4th 44, 67 Cal. Rptr. 2d 850 (1997) ...................................... 8

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ............................................................... 12, 16

*Sokolowski v. Microsoft Corp.*,
    No. 12-CV-10641-R-FMOx, 2013 WL 12138851 (C.D. Cal. Feb.
    27, 2013) ...................................................................................................... 12

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
    368 F.3d 1053 (9th Cir. 2004) ................................................................... 18

*U.S. ex rel. Oliver v. Parsons Co.*,
    195 F.3d 457 (9th Cir. 1999) ..................................................................... 14

*Williams Constr. Co. v. Standard-Pac. Corp.*,
    254 Cal. App. 2d 442 (1967) ....................................................................... 8

*Zenelaj v. Handybook Inc.*,
    82 F. Supp. 3d 968 (N.D. Cal. 2015) ........................................................ 13

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

*Zinzow v. Northrop Grumman Corp.*,
No. CV12-04579-R (AJWx), 2012 WL 12884456 (C.D. Cal. July
30, 2012) .............................................................................................................. 12

**Statutes**

9 U.S.C.A. § 2 ..................................................................................................... 11

9 U.S.C.A. § 3 ..................................................................................................... 18

9 U.S.C.A. § 4 ............................................................................................... 11, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ................................................................................... 18-19

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 7

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

# I.    INTRODUCTION.

This case belongs in arbitration. The entirety of Plaintiff Jeffrey Cuenco's ("Plaintiff") complaint arises from his membership to the University Club atop Symphony Towers (the "Club"), a business club. Plaintiff, a sophisticated businessman, accepted and agreed to membership terms twice - both in 2017 and then again in 2018 after he resigned and later rejoined. Among other things, such membership terms require him to arbitrate any dispute arising out of or relating in any way to his membership on an individual basis with the American Arbitration Association ("AAA"). Despite this agreement, Plaintiff filed a multi-count class action complaint against ClubCorp USA, Inc. ("ClubCorp") in this Court. ClubCorp, as an intended third-party beneficiary to the membership agreement and on behalf of the Club, which is directly operated by ClubCorp's subsidiary ClubCorp Symphony Towers Club, Inc. ("Symphony"), merely seeks to compel the arbitration process agreed to by Plaintiff. This Court should hold Plaintiff to his contractual obligations by compelling arbitration of Plaintiff's claims under contractual and statutory law principles. If the Court is inclined to compel arbitration of Plaintiff's claims, ClubCorp asks that it also dismiss or stay this case pursuant to Section 3 of the Federal Arbitration Act ("FAA").[1]

# II.    STATEMENT OF FACTS.

## A.    Relevant Background.

### 1.    Plaintiff's Membership Contracts.

Symphony manages and operates the Club and is the entity responsible for collection of Plaintiff's dues. Declaration of Frank Busic, ¶¶ 2, 10 ("Busic Decl."), Ex. 2. On June 13, 2017, Plaintiff submitted via DocuSign a signed application for a membership to the Club in which Plaintiff affirmatively agreed to the Club's

---

[1] ClubCorp brings a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) concurrently herewith.

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY

membership policies as well as the Club's bylaws (the "2017 Agreement"), both of which were stated and incorporated therein by reference. *Id.,* ¶ 5, Ex. 1.

In particular, the Club sent Plaintiff the application and agreement via the DocuSign platform, and Plaintiff completed, signed and submitted the 2017 Agreement through DocuSign.[2]

The Membership Policies, which are contained on the same page of the membership application as Plaintiff's signature, state: "If accepted into membership, ***I/we agree to conform to and be bound by the enrollment terms contained herein, the Bylaws,*** the Rules and Regulations, and written membership policies of the Club . . . .") (emphasis added).[3] Plaintiff also specifically acknowledged the arbitration agreement in the 2017 Agreement, again, on the same page he signed:

> **I/WE ACKNOWLEDGE THE MEMBERSHIP BYLAWS** AND THE RULES AND REGULATIONS PROVIDE THE DETAILS OF THE CLUB'S MEMBERSHIP POLICIES, CONDUCT AND OBLIGATIONS, INCLUDING, BUT NOT LIMITED TO, PROVISIONS IN THE EVENT OF DIVORCE, **FOR ARBITRATION OF DISPUTES**, RESIGNATION, REDEMPTION OF MEMBERSHIPS, FINANCIAL OBLIGATIONS, DISCIPLINARY ACTION, RELEASE OF LIABILITY FOR PERSONAL INJURY AND THEFT.

Ex. 1 (emphasis added).

---

[2] DocuSign is a recognized Cloud platform that allows organizations to manage electronic agreements by allowing e-signatures to be captured and transferred on documents, sent and received via email.

[3] Pursuant to California contract law, "the parties may incorporate by reference into their contract the terms of some other document," although "the reference must be clear and unequivocal[ and] ... called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54  (1997) (quoting *Williams Constr. Co. v. Standard-Pac. Corp.*, 254 Cal. App. 2d 442, 454 (1967)). "The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.'" *Id.* (citing *Baker v. Aubry*, 216 Cal. App. 3d 1259, 1264 (1989)); *Chan v. Drexel Burnham Lambert, Inc.,* 178 Cal. App. 3d 632, 644 (1986)).

Plaintiff was accepted into the Club's membership on June 13, 2017 after submitting the signed agreement. *Id.*, ¶ 7. On February 12, 2018, Plaintiff emailed the Club stating that he would like to cancel his membership to the Club because he was moving to the Bay Area. *Id.*, ¶ 8. An employee of the Club advised that Plaintiff could resign from the Club 30 days after providing written notice to the Club pursuant to the Bylaws, and therefore, his membership would terminate on March 14, 2018. *Id.*

On December 27, 2018, Plaintiff submitted to Symphony through DocuSign a newly signed application and agreement to again become a member of the Club (the "2018 Agreement"). *Id.*, ¶ 9, Ex. 3. In the 2018 Agreement, the terms of which are identical to the 2017 Agreement, Plaintiff again agreed to be bound by the Bylaws and acknowledged that any disputes arising out of or relating in any way to his membership must be arbitrated. Ex. 3.

## 2. The Arbitration Agreement.

The Bylaws contain an agreement mandating that any disputes be arbitrated on an individual basis:

> Any controversy . . . **arising out of, or relating in any way to these Bylaws, or the Rules and Regulations, or any Member's membership shall be settled by binding arbitration administered by an arbitrator selected by the American Arbitration Association (the "Arbitrator"), in accordance with its rules.** A judgment upon an award rendered by the Arbitrator may be entered in any court having jurisdiction. The initiating party shall give written notice to the other party of its decision to arbitrate by providing a specific statement setting forth the nature of the dispute, the amount involved, the remedy sought, and the hearing locale requested. The initiating party shall be responsible for all filing requirements and the payment of any and all fees according to the rules of the Arbitrator. The Arbitrator shall award to the prevailing party, if any, as determined by the Arbitrator, all of its costs and expenses including reasonable attorney's fees, Arbitrator's fees, and out-of-pocket expenses of any kind. The Owner and Member agree that the Arbitrator cannot award more than the Initiation Payment paid for the membership pursuant to the Member's Candidate Application, and in no event shall the Owner or the Club be liable for any incidental, indirect, speculative, special, consequential, punitive, or exemplary damages of any kind. The parties agree to waive any right to trial by jury as well as any rights to appeal the final arbitration finding (but not the waiver of any rights to make interlocutory appeals with respect to any preliminary or procedural arbitration findings). The arbitration shall be limited solely to the dispute or controversy between

the Member, the Owner and the Club, except that **affiliates of the Owner and the Club may also participate at the sole election of the Owner and the Club. Member cannot act as a class representative, a private attorney general or in any representative capacity, or participate as a member of a class with respect to claims that are subject to arbitration hereunder . . . .**

Ex. 2, at § 7.5 (emphasis added) (the term "Owner" is previously defined in § 1.1 of the Bylaws as ClubCorp Symphony Towers, Inc.).

The Bylaws also provide that members will assert any claims arising from or related to their memberships or membership dues against Symphony, only. *Id.* at § 7.6 ("The Members recognize and acknowledge that the Owner is an independent entity… to whom the Members will solely look and who is solely responsible for the obligations and liabilities of the Owner recited herein, arising hereunder, or in any manner related to the transactions contemplated hereby.")

### B.   Plaintiff Acknowledges the Existence of a Membership Agreement.

Plaintiff filed this putative class action on April 23, 2020. Plaintiff alleges that he has been a paying month-to-month member of the Club since December 2018 and that he "signed up" expecting certain access to the Club as part of his membership. Compl., ¶ 10. Plaintiff has effectively acknowledged entering into a membership agreement, the same 2018 Agreement that compels arbitration as shown herein.

## III.   ARGUMENT.

Both the 2017 Agreement and the most recent 2018 Agreement contemplate that all the claims Plaintiff seeks to assert related to his membership proceed individually via arbitration. Plaintiff has not challenged the validity of these agreements; nor can he, since Plaintiff relies on his membership agreement to assert his claims. Accordingly, the Court should compel arbitration of each of Plaintiff's claims on an individual basis and dismiss or stay this case pending completion of arbitration, under controlling precedent in the Ninth Circuit and the FAA.

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

Moreover, any issues related to arbitrability, including as to the validity and enforcement of the arbitration provision in an otherwise valid contract, should be reserved for the arbitrator.

### A. The Court Should Issue an Order Compelling Plaintiff to Arbitrate His Claims.

The arbitration provision in the Bylaws, which Plaintiff agreed to when signing and submitting his application, and which is explicitly referenced and incorporated into the 2017 and 2018 Agreements, contemplate that Plaintiff's entire dispute is subject to arbitration. Accordingly, the Court may compel arbitration of this dispute without considering the question of arbitrability because the parties delegated that question to the arbitrator. But even if the Court were to reach this question, it would conclude that arbitration is appropriate.

#### 1. Legal Standard for Enforcement of Arbitration Provisions Under the FAA.

Pursuant to the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. Further, the FAA provides that a party seeking to enforce an arbitration provision may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4. Indeed, "[i]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "The court must rigorously enforce arbitration agreements and must order arbitration if it is satisfied that the making of the agreement [] is not in issue." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (internal quotation marks and citations omitted).

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

In applying the FAA, courts do not look to the merits of the underlying dispute but rather are "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys, Inc..*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C.A. § 4). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*[4] These are the "gateway" issues for the Court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). However, parties may delegate these issues to an arbitrator. *See AT&T Techs., Inc.*, 475 U.S. at 649.

In addition, the burden falls on the party opposing arbitration to demonstrate that the claims should not be arbitrated. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000); *see also, Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("[T]hose parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Finally, courts in the Ninth Circuit routinely uphold class action waivers so long as the agreements are not void on their face. *See, e.g.*, *Laster v. T-Mobile USA, Inc.*, No. 05CV1167 DMS (WVG), 2013 WL 4082682, at *7 (S.D. Cal. July 19, 2013); *Sokolowski v. Microsoft Corp.*, No. 12-CV-10641-R-FMOx, 2013 WL 12138851, at *1 (C.D. Cal. Feb. 27, 2013) (citing 9 U.S.C.A. § 4 and *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)); *Zinzow v. Northrop Grumman Corp.*, No. CV12-04579-R (AJWx), 2012 WL 12884456, at *2 (C.D. Cal. July 30, 2012).

---

[4] "Importantly, because the FAA 'is phrased in mandatory terms,' 'the standard for demonstrating arbitrability is not a high one [and] a district court has little discretion to deny an arbitration motion.'" *Moule v. United Parcel Serv. Co.*, No. 1:16-00102-JLT, 2016 WL 3648961, at *2-3 (E.D. Cal. July 7, 2016) (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991)).

2.    **Plaintiff Agreed to Submit the Question of Arbitrability to an Arbitrator.**

In the Ninth Circuit, "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *accord Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). This is in part because the AAA rules provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Brennan*, 796 F.3d at 1130. This "should not be interpreted to require that contracting parties be sophisticated . . . before a court may conclude that incorporation of the AAA rules," adequately demonstrates the parties' intent. *Id.* at 1130; *see also, Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 974 (N.D. Cal. 2015) (stating that cases concluding that less sophisticated parties do not clearly and unmistakably delegate arbitrability by incorporation of AAA rules are "at odds with the prevailing trend of case law").

By incorporating the AAA rules in an otherwise valid contract, Plaintiff clearly and unmistakably agreed to delegate the question of arbitrability to an arbitrator. Exs. 1-3. Accordingly, this Court should order the parties to arbitration without even considering the "gateway" questions identified above—i.e., whether a valid agreement to arbitrate exists and whether the agreement encompasses the dispute at issue.

3.    **The Arbitration Provision Is Valid and an Enforceable Agreement Exists Requiring Plaintiff to Arbitrate His Claims.**

Even if the Court reaches the question of arbitrability, which it need not do here in light of the undisputable existence of a contract that incorporates the AAA rules, the Court should order the parties to arbitration because the arbitration provision is valid and encompasses all of Plaintiff's claims. In addition, in the case

of purported class actions, courts are to be mindful of "Congress' directive to reverse the long standing judicial hostility to arbitration agreements." *Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196, 1201 (C.D. Cal. 2006).

Under California law, "the elements for a viable contract are '(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration.'" *Moule*, 2016 WL 3648961, at *3 (quoting *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999)).

Here, Plaintiff assented to the Club's membership policies and the Bylaws by submitting the signed 2017 Agreement and 2018 Agreement and using the Club's services, which continued beyond just access to the Club. Busic Decl., ¶ 10, Exs. 1, 3. In particular, on June 13, 2017 and December 27, 2018, Plaintiff, a businessman who desired private club access, filled out the Club's application, affirmatively agreed to the membership policies and Bylaws, and ultimately signed the application via DocuSign, before submitting it back to the Club. *Id.*, ¶¶ 5, 9. Plaintiff had access to the Bylaws when he submitted the 2018 Agreement not only because they were available online and because he acknowledged receiving them when he signed the 2018 Agreement, but also because Plaintiff was referred to the Bylaws when he emailed the Club to cancel his membership before signing back up again nine months later. *Id.*, ¶¶ 7, 8. The Club processed Plaintiff's membership per the terms of the membership policies and Bylaws as stated in the application. *Id.*, ¶¶ 3, 7. Under California law, electronic agreements such as that entered into by Plaintiff are valid and enforceable. *Rosendahl v. Bridgepoint Educ., Inc.*, No. 11CV61 WQH (WVG), 2012 WL 667049, at *6 (S.D. Cal. Feb. 28, 2012) (holding that defendants proved the existence of a valid arbitration agreement where defendants submitted a copy of plaintiffs' "online application forms which contain the arbitration agreement and were signed with e-signature.")

In addition, Plaintiff's claims arise out of his membership, namely his ability to use the Club's facilities, and the collection of dues as outlined in the Bylaws.

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

Where a plaintiff has "taken advantage of several terms contained in the Agreement, and has now sued to enforce those rights," there is "not a single case" that would support the plaintiff's ability "to avoid the applicability of the contract's valid arbitration clause." *MoistTech Corp. v. Sensortech Sys., Inc.*, No. CV 15-4952 PA (JPRx), 2015 WL 12778416, at *4 (C.D. Cal. Sept. 14, 2015). Under the laws of California, Plaintiff agreed to the arbitration provision.

What is more, the arbitration provision encompasses Plaintiff's claims. The arbitration provision in the Bylaws covers disputes "arising out of, or relating in any way to these Bylaws, or the Rules and Regulations, or any Member's membership." Ex. 2. In addition, Plaintiff agreed that "[Plaintiff] cannot act as a class representative, a private attorney general or in any representative capacity, or participate as a member of a class with respect to claims that are subject to arbitration hereunder." *Id.*

The broad language of the Bylaws enjoys a presumption that claims fall within their scope. *Aspire Home Healthcare, Inc. v. Therastaff, LLC*, No. 13CV2917-MMA (JLB), 2014 WL 12539917, at *2 (S.D. Cal. June 9, 2014) (holding that the arbitration provision encompassed plaintiffs' claims because "the parties' arbitration agreement includes both 'arising out of' and 'relating to,' indicating that the parties intended to agree to a broad arbitration provision"); *Kosel v. Sw. Reg'l Council of Carpenters*, No. 14-CV-1396 JLS (NLS), 2014 WL 12570909, at *4 (S.D. Cal. Sept. 24, 2014) (granting defendants' motion to compel arbitration and reasoning that the arbitration provision, which covered "[a]ny questions arising out of and during the term of this Agreement involving its interpretation and application…", was "extraordinarily broad, rendering the likelihood that this dispute falls within the scope of the arbitration provision high.") (Sammartino); *Cristo v. Charles Schwab Corp.*, No. 17-CV-1843-GPC-MDD, 2018 WL 1737544, at *5 (S.D. Cal. Apr. 11, 2018) ("A provision that includes 'any controversy' 'relating to' or 'in any way arising from [a] relationship with' are

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

construed broadly.") (citing *Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (the phrase "arising out of or relating to" in an arbitration agreement are construed broadly, and the factual allegations at issue "need only touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitration."); *Larkin v. Williams, Woolley, Cogswell, Nakazawa Russell*, 76 Cal. App. 4th 227, 230 (1999) ("the phrase '[a]ny controversy or claim arising out of or relating to any provision of this [agreement] ...' construed very broad."))

Indeed, this dispute falls within each of the categories of claims: the Bylaws and Plaintiff's membership. While Plaintiff fundamentally misunderstands and misconstrues the nature of his membership, it is clear that Plaintiff's claims fall within the scope of the arbitration provision.

### 4. Plaintiff's Claims Against ClubCorp Are Subject to the 2018 Arbitration Agreement.

As a final matter, the arbitration agreement encompasses Plaintiff's claims against ClubCorp and gives it standing to bring this motion. Specifically, the provision requires Plaintiff to arbitrate all disputes "arising out of, or relating in any way to these Bylaws, or the Rules and Regulations, or any Member's membership" without regard to what entity Plaintiff pursues his claims against. Ex. 2. As such, Plaintiff's claims against ClubCorp fall squarely within this arbitration provision.

In addition, a litigant who is not a direct party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Here, California law permits ClubCorp to enforce the arbitration provision in the Club's Bylaws. Under California law, a non-signatory may enforce an arbitration agreement against a signatory if: (1) a signatory "rel[ies] on the terms of the written agreement in asserting its claims against the non-signatory or the claims are 'intimately founded in and intertwined with' the underlying contract," or

(2) "the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'" *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013) (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 221 (2009)). A third party can also enforce an arbitration agreement against a signatory under third party beneficiary theories when the arbitration agreement allows third parties to elect arbitration. *Selby v. Deutsche Bank Tr. Co.*, No. 12CV1562 AJB (BGS), 2013 WL 12072527, at *2 (S.D. Cal. Nov. 13, 2013) (finding that non-signatory defendant, the collection agency for plaintiff's credit card at issue, was a beneficiary to the arbitration agreement language of the Agreement is "broad and allows any involved third party to elect binding arbitration"); *Lanning v. BMW of N. Am., LLC*, No. 3:19-CV-00773-BEN-LL, 2019 WL 5748518, at *5 (S.D. Cal. Nov. 5, 2019) (holding that non-signatory defendant could enforce the arbitration agreement, which required arbitration between the parties to the agreement, " affiliates ... or assigns, or between me and any third parties" because defendant was "within the class of persons (i.e., assigns) whom the arbitration provision was intended to benefit").

Here, Plaintiff cannot evade the arbitration agreement when Plaintiff's claims are clearly "'intimately founded in and intertwined with' the underlying contract," for example, the contract with Symphony and the Club. Moreover, Plaintiff's claims as to breaches of the membership agreement by ClubCorp involves, at best, allegations of interdependent misconduct with respect to the actual signatory to the agreement. Plaintiff alleges that ClubCorp "charged Plaintiff's credit card in the full amount of his month-to-month membership—$184.00—even though Plaintiff does not have access to [ClubCorp's] private clubs. Further, [ClubCorp] has not refunded Plaintiff any part of his monthly fee for the time in which [ClubCorp's] private clubs have remained closed." Compl., ¶ 10. Insofar as Plaintiff alleges that

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

ClubCorp operated the Club and Plaintiff's membership, under California law, Plaintiff must individually arbitrate his claims against ClubCorp.

Moreover, ClubCorp is a third-party beneficiary of the 2018 Agreement and the arbitration agreement contained therein. The membership contract itself contemplates claims against entities other than Symphony. For example, the arbitration agreement states that "affiliates of [Symphony] and the Club may also participate" in arbitration. Ex. 2, at § 7.5. ClubCorp is an affiliate of Symphony (Busic Decl., ¶ 2), and is therefore a third-party beneficiary of the arbitration agreement. *Selby*, 2013 WL 12072527 at *2; *Lanning*, 2019 WL 5748518 at *5. Further, § 7.6 provides that Plaintiff will assert any and all claims relating to his membership or his membership dues against Symphony, not ClubCorp. Thus, it is foreseeable that ClubCorp would seek to enforce the membership contract and the arbitration agreement therein. Because ClubCorp's alleged misconduct is based on supposed breaches of promises to Plaintiff with regard to the Club membership *(see, e.g.*, FAC, ¶¶ 52-54), ClubCorp can seek to enforce the arbitration provision as a non-signatory and third-party beneficiary.

## 5. The Court May Dismiss This Action or Stay This Case Pending the Conclusion of the Arbitration Proceedings.

In the event the Court is inclined to compel Plaintiff to arbitrate his claims, or finds that Plaintiff's claims are subject to arbitration, the FAA empowers this Court to stay proceedings until the parties have conducted arbitration proceedings. 9 U.S.C. § 3; *see also, Entravision Commc'ns Corp. v. BroadView Software, Inc.*, No. CV 09-4573-GHK (AJWx), 2009 WL 10675885, at *3 (C.D. Cal. Aug. 26, 2009) (staying case because the court found that the claims were arbitrable). Additionally, this Court also has discretion to dismiss the action if it finds that the claims are arbitrable. *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004). Indeed, courts in this district have also dismissed complaints that consist of arbitrable claims pursuant to Fed. R. Civ. P. 12(b)(1). *See Ever-*

*Gotesco Res. & Holdings, Inc. v. PriceSmart, Inc.*, 192 F. Supp. 2d 1040, 1046 (S.D. Cal. 2002); *Peffer v. Philadelphia Indem. Co.*, No. 14CV2980 JAH (JLB), 2015 WL 5675424, at *4 (S.D. Cal. Sept. 25, 2015); *Ins. Co. of the State of Pennsylvania v. Centex Homes*, No. 14-CV-18-H (BLM), 2014 WL 12577032, at *4 (S.D. Cal. Apr. 3, 2014); *Eubank v. Terminix Int'l, Inc.*, No. 15CV00145-WQH (JMA), 2015 WL 1843026, at *5 (S.D. Cal. Apr. 21, 2015).

Because all of the issues raised in the Complaint are subject to the broad arbitration provision, ClubCorp respectfully requests that this Court dismiss this action in its entirety.

## IV.    CONCLUSION.

For the foregoing reasons, ClubCorp respectfully requests that the Court compel arbitration on an individual basis and dismiss this case, or stay the case pending the conclusion of arbitration proceedings.

DATED: June 9, 2020                    BLANK ROME LLP


                                       By: */s/ Julianna M. Simon*
                                       Ana Tagvoryan
                                       Julianna Simon
                                       Attorneys for CLUBCORP USA. INC.

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2029 Century Park East, 6th Floor, Los Angeles, California 90067.

On June 9, 2020, I served the foregoing document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION, AND DISMISS OR STAY** on the interested parties in this action as follows:

☒ **By Electronic Filing:** I am familiar with the United States District Court, Southern District of California's practice for collecting and processing electronic filings. Under that practice, documents are electronically filed with the court. The court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities. Under said practice, the CM/ECF users listed on the attached <u>Service List</u> were served:

Executed on June 9, 2020, at Los Angeles, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Charman S. Bee

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**

1

# <u>SERVICE LIST</u>

2

3   LAW OFFICES OF RONALD A. MARRON        *Attorneys for Plaintiff,*
    Ronald A. Marron, Esq.                 *JEFFREY CUENCO*
4   Michael T. Houchin, Esq.
5   Lilach Halperin, Esq.
6   651 Arroyo Drive
    San Diego, California 92103
7   Telephone:  (619) 696-9006
8   Facsimile:  (619) 564-6665
    Email:      ron@consumersadvocates.com
9               mike@consumersadvocates.com
10              lilach@consumersadvocates.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, AND DISMISS OR STAY**