UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY CUENCO and LINDA HONG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CLUBCORP USA, INC., CLUBCORP HOLDINGS, INC., CCA CLUB OPERATIONS HOLDINGS, LLC, CLUBCORP CLUB OPERATIONS, INC., CLUBCORP SYMPHONY TOWERS CLUB, INC., CLUBCORP SAN JOSE CLUB, INC., and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No.: 20cv774 DMS (AHG)<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' (1) MOTION TO COMPEL ARBITRATION, AND DISMISS OR STAY, (2) MOTION TO DISMISS, AND (3) MOTION TO STRIKE** |

On January 4, 2021, this case was reassigned to the undersigned judge. At that time, there were three fully-briefed motions pending before the Court: (1) a motion to dismiss, (2) a motion to strike, and (3) a motion to compel arbitration. This Court has now reviewed the motions, and denies them without prejudice for the reasons set out below.

///

///

# I.

# BACKGROUND

On December 27, 2018, Plaintiff Jeffrey Cuenco submitted an application for membership to the University Club atop Symphony Towers ("University Club") in San Diego, California, through the DocuSign platform.[1] (Decl. of Brian Lee in Supp. of Mot. ("Lee Decl.") ¶9, Ex. 3.) The final section of the application includes a heading entitled, "Membership Policies," which states:

> If accepted into membership, I/we agree to conform to and be bound by the enrollment terms contained herein, the Bylaws, the Rules and Regulations, and written membership policies of the Club ('Membership Documents') as they may be amended from time to time. … I/We hereby acknowledge receipt of a copy of the Bylaws and the Rules and Regulations of the Club.

(Lee Decl., Ex. 3.) The application goes on to state:

> I/WE ACKNOWLEDGE THE MEMBERSHIP BYLAWS AND THE RULES AND REGULATIONS PROVIDE THE DETAILS OF THE CLUB'S MEMBERSHIP POLICIES, CONDUCT AND OBLIGATIONS, INCLUDING, BUT NOT LIMITED TO, PROVISIONS IN THE EVENT OF DIVORCE, FOR ARBITRATION OF DISPUTES, RESIGNATION, REDEMPTION OF MEMBERSHIPS, FINANCIAL OBLIGATIONS, DISCIPLINARY ACTION, RELEASE OF LIABILITY FOR PERSONAL INJURY AND THEFT. **I/WE HEREBY FULLY RELEASE AND DISCHARGE THE CLUB, ITS EMPLOYEES, AGENTS, SHAREHOLDERS, MEMBERS, MANAGERS, AFFILIATES AND ASSIGNS FROM ANY LIABILITY, INJURY, LOSS, DAMAGE OR CLAIM ARISING FROM MY/OUR USE OF THE CLUB FACILITIES**.

(*Id.*) Mr. Cuenco's application for membership was approved, and he thereafter began paying monthly dues in the amount of $169. (Compl. ¶10.)

---

[1] According to Defendants, "DocuSign is a recognized Cloud platform that allows organizations to manage electronic agreements by allowing e-signatures to be captured and transferred on documents, sent and received via email." (Mem. of P. & A. in Supp. of Mot. at 8 n.3.)

2

On November 14, 2019, Plaintiff Linda Hong applied for membership in the Silicon Valley Capital Club ("SV Club") through the Club's website.  (Decl. of Dani Bongatti in Supp. of Mot. ("Bongatti Decl.") ¶8.)  According to screen shots of the application process, there is a screen with a heading, "Terms & Conditions," under which states:  "By checking this box and clicking the 'Next' button at the bottom of this page, you agree to be bound by all of the terms and conditions related to the Membership Information, Membership Policies, and privacy policies."  (Bongatti Decl., Ex. 5.)  Ms. Bongatti states the underlined phrases are hyperlinks, and that applicants must check the box stating "I Accept" before proceeding to the next page.  (Bongatti Decl. ¶5.)  However, it is unclear whether the applicant must click through all of the hyperlinks or may simply check the "I Accept" box on the "Terms & Conditions" screen.  Assuming Ms. Hong clicked on the hyperlink for "Membership Policies," that page states, similar to Mr. Cuenco's membership application: "I/We agree that if accepted into Membership, I/we agree to conform to and be bound by the enrollment terms, the Membership Bylaws, the Rules and Regulations, and written Membership policies of the Club as they may be amended from time to time."  (Bongatti Decl., Ex. 5.)  It also states:

> I/WE ACKNOWLEDGE THE MEMBERSHIP BYLAWS AND THE RULES AND REGULATIONS PROVIDE THE DETAILS OF THE CLUB'S MEMBERSHIP POLICIES, CONDUCT AND OBLIGATIONS, INCLUDING, BUT NOT LIMITED TO, PROVISIONS IN THE EVENT OF DIVORCE, FOR ARBITRATION OF DISPUTES, RESIGNATION, REDEMPTION OF MEMBERSHIPS, FINANCIAL OBLIGATIONS, DISCIPLINARY ACTION, RELEASE OF LIABILITY FOR PERSONAL INJURY AND THEFT.  **I/WE HEREBY FULLY RELEASE AND DISCHARGE THE CLUB, ITS EMPLOYEES, AGENTS, SHAREHOLDERS, MEMBERS, MANAGERS, AFFILIATES AND ASSIGNS FROM ANY LIABILITY, INJURY, LOSS, DAMAGE OR CLAIM ARISING FROM MY/OUR USE OF THE CLUB FACILITIES**.

(*Id.*)  Ms. Hong was accepted into the Club on November 15, 2019, and thereafter began paying monthly dues in the amount of $199.75.  (*Id.*)

/ / /

Plaintiffs allege that in March 2020, both the University Club and the SV Club were closed due to the COVID-19 pandemic. (First Am. Compl. ("FAC") ¶¶ 4-5.) Despite those closures, Plaintiffs were still charged their monthly dues.

As a result, Mr. Cuenco filed the present case on behalf of himself and all others similarly situated. In his original Complaint, he named ClubCorp USA, Inc. as the sole Defendant, and alleged that it was "the operator of more than 20 private clubs nationwide, including private clubs in California." (Compl. ¶11.) Mr. Cuenco alleged claims for violation of California's Consumer Legal Remedies Act, violation of California's Unfair Competition Law, violation of California's False Advertising Law, breach of contract, unjust enrichment, and money had and received. In response to the original Complaint, ClubCorp filed a motion to compel arbitration and a motion to dismiss. Mr. Cuenco then filed a First Amended Complaint, adding Ms. Hong as a Plaintiff and adding as Defendants ClubCorp Holdings, Inc., CCA Club Operations Holdings, LLC, ClubCorps Club Operations, Inc., ClubCorp Symphony Towers Club, Inc. d/b/a University Club atop Symphony Towers, and ClubCorp San Jose Club, Inc. d/b/a Silicon Valley Capital Club. The FAC also includes additional claims for breach of express warranty and conversion.[2] In response to the FAC, Defendants filed the present motions.

## II.

## MOTION TO COMPEL ARBITRATION

Defendants move to compel arbitration of Plaintiffs' claims pursuant to the Bylaws of each Plaintiff's respective Club, which Defendants argue are incorporated by reference in each Plaintiff's membership application. (Mem. of P. & A. in Supp. of Mot. at 8, 11.) Plaintiffs do not dispute that they submitted membership applications to the Clubs, but do dispute whether the Club Bylaws were incorporated therein, and thus whether there exist arbitration agreements between the parties.

---

[2] The Court notes Plaintiffs withdrew their breach of express warranty claim in their opposition to Defendants' motion to dismiss. (*See* ECF No. 30 at 1 n.1.)

The FAA governs the enforcement of arbitration agreements involving interstate commerce. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). "The overarching purpose of the FAA ... is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "The FAA 'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original).

Consistent with these principles, the Court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In this case, the parties dispute whether there is an agreement to arbitrate, therefore the Court turns first to that issue.

"Under California law, the party seeking to compel arbitration has the burden of proving … by a preponderance of the evidence" the existence of an agreement to arbitrate. *Newton v. Am. Debt Servs., Inc.*, 854 F.Supp.2d 712, 721 (N.D. Cal. 2012) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)). Here, Defendants assert the parties' agreements to arbitrate are found in Section 7.5 of the Clubs' Bylaws.[3]

---

[3] Section 7.5 of the University Club Bylaws states: "Any controversy (other than collection cases brought by the Owner against a Member for nonpayment of dues, charges and accounts and disciplinary matters for which a decision has not been rendered by the Club) arising out of, or relating in any way to these Bylaws, or the Rules and Regulations, or any Member's membership shall be settled by binding arbitration administered by an arbitrator selected by the American Arbitration Association (the "Arbitrator"), in accordance with its rules. A judgment upon an award rendered by the Arbitrator may be entered in any court having jurisdiction. The initiating party shall give written notice to the other party of its decision to arbitrate by providing a specific statement setting forth the nature of the dispute, the amount involved, the remedy sought, and the hearing locale requested. The initiating party shall be responsible for all filing

Defendants contend Plaintiffs assented to these agreements when they submitted their applications for membership in their respective Clubs. In support of this contention, Defendants cite the applications themselves, wherein Plaintiffs agreed "to conform to and be bound by the enrollment terms contained herein, the Bylaws, the Rules and Regulations, and written membership policies of the Club ('Membership Documents') as they may be amended from time to time." (Lee Decl., Ex. 1.) Defendants also cite the following paragraph of the membership application, which states:

> I/WE ACKNOWLEDGE THE MEMBERSHIP BYLAWS AND THE RULES AND REGULATIONS PROVIDE THE DETAILS OF THE CLUB'S MEMBERSHIP POLICIES, CONDUCT AND OBLIGATIONS, INCLUDING, BUT NOT LIMITED TO, PROVISIONS IN THE EVENT OF DIVORCE, FOR ARBITRATION OF DISPUTES, RESIGNATION, REDEMPTION OF MEMBERSHIPS, FINANCIAL OBLIGATIONS,
>
> requirements and the payment of any and all fees according to the rules of the Arbitrator. The Arbitrator shall award to the prevailing party, if any, as determined by the Arbitrator, all of its costs and expenses including reasonable attorney's fees, Arbitrator's fees, and out-of-pocket expenses of any kind. The Owner and Member agree that the Arbitrator cannot award more than the Initiation Payment paid for the membership pursuant to the Member's Candidate Application, and in no event shall the Owner or the Club be liable for any incidental, indirect, speculative, special, consequential, punitive, or exemplary damages of any kind. The parties agree to waive any right to trial by jury as well as any rights to appeal the final arbitration finding (but not the waiver of any rights to make interlocutory appeals with respect to any preliminary or procedural arbitration findings). The arbitration shall be limited solely to the dispute or controversy between the Member, the Owner and the Club, except that affiliates of the Owner and the Club may also participate at the sole election of the Owner and the Club. Member cannot act as a class representative, a private attorney general or in any representative capacity, or participate as a member of a class with respect to claims that are subject to arbitration hereunder. Should any Member, Member's spouse, Spousal Equivalent or Spousal Designee, or children (or representative for any children) fail to abide by the jurisdictional forums provided for in this Section and institute a lawsuit or action against or involving the Club or the Owner, the Member's membership may be terminated, and the Member's transferability rights, if any, shall be forfeited." (Lee Decl., Ex. 2.) Section 7.5 of the SV Club Bylaws contains a similar provision. (Bongatti Decl., Ex. 10.)

DISCIPLINARY ACTION, RELEASE OF LIABILITY FOR PERSONAL INJURY AND THEFT.

(*Id.*)  Defendants argue that by these two provisions, the membership applications "incorporated by reference" the Clubs' respective Bylaws, (Mem. of P. & A. in Supp. of Mot. at 8), thereby demonstrating the existence of valid agreements to arbitrate.

"'Under California law, parties to an agreement can incorporate the terms of another document into the agreement by reference.'" *Pulido v. Caremore Health Plan, Inc.*, No. CV2002730ABAFMX, 2020 WL 5077353, at *4 (C.D. Cal. May 12, 2020) (quoting *Ko v. Anthem Companies, Inc.*, No. SACV 19-2436 JVS (DFMx), 2020 WL 1467336, at *5 (C.D. Cal. Mar. 26, 2020)).

> "For the terms of another document to be incorporated into the document executed by the parties, the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties."

*Id.* (quoting *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997)).

Here, Plaintiffs argue that last element is not met.  Specifically, they assert the terms of the Bylaws were neither known nor easily available to either Plaintiff when they submitted their applications.  Defendants respond that the Bylaws were available to each Plaintiff, and that Plaintiff Cuenco, in particular, acknowledged receipt of the Bylaws in his membership application.

"Whether a document purportedly incorporated by reference was 'readily available' is a question of fact." *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 895 (2008) (quoting *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 644-45 (1986)).  Here, the facts are in dispute.  Defendants' Declarants, Mr. Lee and Ms. Bongatti, both state "[i]ndividuals have access to the Bylaws online and may ask for a copy via mail or email", (Lee Decl. ¶6; Bongatti Decl. ¶12), but neither provides any direct evidence that Defendants provided a copy of the Bylaws to Plaintiffs via mail or email.  It is also unclear whether either Plaintiff had access to the Bylaws online before their membership

applications were approved. Indeed, Mr. Lee suggests Plaintiff Cuenco only had access to the Bylaws after he was accepted for membership in the Club. (Lee Decl. ¶7) (stating Cuenco was accepted for admission to the Club on June 13, 2017, and "[*t*]*hereafter*, [he] had continuous access to the Bylaws.") (emphasis added). That would be consistent with Plaintiff Cuenco's statement that he did not receive a copy of the Bylaws when he submitted his application, and that he had to log in to his private online membership portal to access the Club's Bylaws. (Cuenco Decl. ¶7.) Defendants do not dispute that individuals may access the Club Bylaws through the membership portal, (see Reply at 6) (stating Plaintiff Cuenco "retrieved a copy of the Bylaws *from the member portal*") (emphasis added), but this, of course, assumes the individual has been accepted for membership. It does not address whether or how an *applicant* for admission would gain access to the Bylaws.

On this evidence, there is a factual dispute about whether the Bylaws were readily available to Plaintiffs when they submitted their applications, and hence, whether the Bylaws were incorporated by reference into those applications. If the Bylaws were incorporated by reference, then there was an agreement to arbitrate, but if they were not, then there was no such agreement. In light of this dispute, the Court must try the issue. *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement … be in issue, the court shall proceed summarily to the trial thereof.")

### III.

### CONCLUSION AND ORDER

For the reasons set out above, Defendants' motion to compel arbitration and to dismiss or stay this case is denied. *See Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2021 WL 540155, at *12 (C.D. Cal. Jan. 19, 2021) (denying motion to compel arbitration in light of "factual disputes as to the existence of a valid agreement to arbitrate"). The parties shall meet and confer and submit a joint report to the Court on how they would like to proceed with this case under Section 4 of the FAA, or otherwise. That report shall be filed on or before **March 12, 2021**. Pending that report and resolution of

this threshold issue, the Court denies without prejudice Defendants' motion to dismiss and motion to strike.

**IT IS SO ORDERED**.

Dated: March 2, 2021

                                           Hon. Dana M. Sabraw, Chief Judge
                                           United States District Court